Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> JIM O'NEAL DISTRIBUTING, INC., a California corporation, and O'NEAL EUROPE GMBH & CO. KG f/k/a 2WHEEL-DISTRIBUTION GMBH & CO. KG, a German limited liability company, <br><br> Defendants. | Civil Action No. 5:14-cv-01327 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK COUNTERFEITING, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT, AND BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "MEC") by and through its undersigned attorneys, files this Complaint against Defendant Jim O'Neal Distributing, Inc. ("O'Neal USA") and Defendant O'Neal Europe GmbH & Co. KG f/k/a 2Wheel-Distribution GmbH & Co. KG ("O'Neal Europe") (collectively "Defendants"), and alleges as follows:

## I.  <u>JURISDICTION AND VENUE</u>

1.　This is an action for (a) trademark infringement under 15 U.S.C. § 1114; (b) trademark counterfeiting under 15 U.S.C. § 1114; (c) false designation of origin and trade dress infringement arising under 15 U.S.C. § 1125(a); (d) federal dilution arising under 15 U.S.C. § 1125(c); (e) copyright infringement arising under 17 U.S.C. § 501 *et seq.*; (f) unfair competition arising under California Business & Professions Code § 17200 *et seq*.; (g) unfair competition arising under the common law of the State of California; and (h) breach of contract arising under the common law of the State of California.

2.　This Court has original subject matter jurisdiction over the claims that relate to trademark infringement; trademark counterfeiting; false designation of origin; trademark dilution; and trade dress infringement pursuant to 15 U.S.C. §§ 1116 and 1121(a).  The Court also has original subject matter jurisdiction over those claims and the copyright infringement claim pursuant to 28 U.S.C. § 1331 and 1338(a), as the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.　This Court has personal jurisdiction over Defendants because they have continuous, systematic, and substantial presence within this judicial district and within California.  By selling and offering for sale infringing products

and/or causing infringing products to be imported, sold, and/or offered for sale in this judicial district, and by committing acts of trade dress, trademark, and/or copyright infringement in this judicial district, including, but not limited to, selling infringing products indirectly and/or directly to consumers and/or retailers in this district, and, upon information and belief, selling into the stream of commerce knowing and intending that such products would be sold in California and this district, Defendants' acts form a substantial part of the events or omissions giving rise to MEC's claims.  Moreover, upon information and belief, Defendant O'Neal Europe has acted in concert with Defendant O'Neal USA to sell and/or offer for sale infringing products in California and in this district.

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c), as a substantial portion of the events herein took place in this Judicial District.  Defendant O'Neal USA has also consented to this venue in the Settlement Agreement described below giving rise to MEC's breach of contract claim.

## II.  **THE PARTIES**

5.      Plaintiff MEC is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.      Upon information and belief, Defendant O'Neal USA is a corporation organized and existing under the laws of the State of California, having a principal place of business at 685 Cochran Street, Simi Valley, California 93065.

7.      Upon information and belief, Defendant O'Neal Europe, is a German limited liability company having a principal place of business at Erich-Blum-Str. 33, D-71665 Vaihingen/Enz, Germany.  Upon information and belief, Defendant O'Neal Europe is an affiliate and/or sister company of Defendant

1  O'Neal USA.

2  **III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF**

3  **A.  MEC's Trademarks and Copyrights**

4       8.    MEC is a nationwide leader in the business of developing,

5  marketing, selling, and distributing beverages, including energy drinks.

6       9.    In 2002, long before Defendants' acts described herein, MEC

7  launched its MONSTER ENERGY® brand of drinks, bearing its now famous

8  

9  mark ("Claw Icon Mark"), MONSTER™ Mark, MONSTER ENERGY®

10 Mark, and well-known trade dress (hereinafter the "MONSTER Trade Dress")

11 as shown below.



24      10.   The MONSTER Trade Dress, as shown in the picture above,

25 includes the common elements of a black or black and gray background, a

26 clawed letter "M", a bright contrasting accent color, the word "MONSTER" in a

27 white, stylized font, and includes an overall aggressive, edgy theme.

28

11.    MEC is the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon Mark, and many of which also include its famous MONSTER<sup>TM</sup> and MONSTER ENERGY® Marks including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |

-4-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |

-5-

12.   MEC is also the owner of numerous other trademark registrations for its famous MONSTER ENERGY® Mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/03 | 01/17/06 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/03 | 01/17/06 |
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/02 | 02/07/06 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/03 | 08/29/06 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/07 | 10/11/11 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/07 | 10/11/11 |

13.     MEC is also the owner of numerous other trademark registrations for marks incorporating its famous MONSTER™ Mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 08/24/2011 | 03/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form<br>Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/06/2010 | 04/17/2012 |
| MONSTER CUBA-LIMA | 4,269,880 | Nutritional supplements in liquid form<br>Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/14/2012 | 01/01/2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form<br>Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/02/2010 | 07/30/2013 |
| MUSCLE MONSTER | 4,451,535 | Vitamin fortified beverages<br>Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy shakes; chocolate energy shakes<br>Ready to drink coffee based beverages; ready to drink chocolate-based beverages | 07/10/2013 | 12/17/2013 |
| MONSTER ENERGY ULTRA RED | 4,532,292 | Nutritional supplements in liquid form ; vitamin fortified beverages<br>Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/13/2013 | 05/20/2014 |
| MONSTER ENERGY ULTRA BLUE | 4,534,414 | Nutritional supplements in liquid form; vitamin fortified beverages<br>Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 01/02/2013 | 05/20/2014 |

-8-

14.    Attached hereto as Exhibits A1-A26 are true and correct copies of MEC's trademark registrations identified in Paragraphs 11, 12, and 13 of this Complaint.

15.    Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,134,841, 3,434,822, 3,434,821, 3,044,315, 3,044,314, 3,057,061, and 3,134,842 are now incontestable.

16.    In addition, MEC is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon Mark, including at least U.S. Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215, and VA 1-789-900.    Attached hereto as Exhibits "B" through "E" are true and correct copies of MEC's copyright registrations.

17.    MEC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster™ Assault®; Monster™ Khaos®, Monster M-80®; Ubermonster®; Monster Energy® Import and Monster Energy® Import Light; Punch Monster™ ; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy Ultra Red®; Monster Cuba-Lima®; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes MEC's Monster Rehab® Rojo Tea + Energy,  Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and 〰®  Monster Energy® which is a five

-9-

1  ounce super concentrated energy drink (referred to collectively as
2  "MONSTER™ line of drinks").

3      18.   The containers of MEC's MONSTER™ line of drinks are
4  prominently marked with MEC's Claw Icon Mark and MONSTER™ Mark.
5  Many of MEC's drinks also bear MEC's MONSTER ENERGY® Mark and/or
6  MONSTER Trade Dress.  Since 2002, MEC has spent over $2.7 billion dollars
7  on promoting, advertising and marketing its MONSTER™ brand.   MEC's
8  promotional efforts include – by way of example but not limitation – substantial
9  print media, internet advertising, point of sale materials, sponsorship of athletes,
10  sponsorship of musicians, sponsorship of live and televised events, contests,
11  music concerts and attendance at trade shows.   MEC's Claw Icon Mark,
12  MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade
13  Dress are prominently featured in MEC's advertisements and promotions for its
14  MONSTER™ line of drinks.

15      19.   Shown below are true and accurate representative pictures
16  illustrating MEC's MONSTER™ line of drinks bearing its famous Claw Icon
17  Mark and MONSTER™ Mark.   Many of the containers also bear the
18  MONSTER ENERGY® Mark and/or the MONSTER Trade Dress:





20.     Since the initial launch of its original MONSTER ENERGY® drink in 2002, MEC has continually used its Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and the MONSTER Trade Dress in connection with its MONSTER™ line of drinks and in extensive and widespread promotional, advertising and marketing activities relating to those products.

21.     Long before Defendants' acts described herein, MEC also has used, and continues to use, its Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade Dress in connection with helmets, headgear, sports gear, sports bags, clothing and accessories.  True and correct examples of authorized helmets, apparel and accessories bearing MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade Dress are shown below.













  

22.    MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and the MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of drinks, and MONSTER™ apparel and accessories.  MEC has and continues to widely market and promote its Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress in the industry and to consumers by displaying the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress on more than 10 billion cans sold worldwide to date, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress, in magazines and other industry publications, on the MONSTER ENERGY® website and other Internet websites, attendance at trade shows, concert tours and live events, sponsorship of athletes, athletic teams, and athletic competitions around the world.

23.    Shown below are true and accurate representative pictures illustrating just a few examples of MEC's MONSTER™ point of sale materials bearing MEC's famous Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and displaying MEC's distinctive MONSTER Trade Dress:






24.     MEC also sponsors over 200 athletes and numerous athletic events in connection with its MONSTER™ brand drinks, apparel, and accessories, bearing the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress.  Many of these athletes promote the MONSTER™ products bearing the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress on their helmets, clothing, uniforms, and gear as shown, for example, below:

-14-









25.     MEC sponsors or has sponsored numerous sporting events, including the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, the UEM EMX2 European Motocross Championship, and the X Games.  At MEC-sponsored events, MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

26.     In addition to the sporting events above, MEC also sponsors other athletes and athletic teams who compete in a wide-variety of sports, including

motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and various classes of NASCAR racing.  Many of the events that the MEC-sponsored athletes and athletic teams compete in are broadcast nationally on television and all of them prominently display the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress.

27.   MEC's MONSTER™ family of products has achieved substantial commercial success.  Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide.  From 2002 to the present, MEC has sold more than 10 billion cans worldwide, all of which bear the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress.  MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the U.S.  As a result of MEC's substantial use and promotion of its Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and the MONSTER Trade Dress in connection with its MONSTER™ family of products, MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress have acquired great value as specific identifiers of MEC's products and serve to identify and distinguish MEC's MONSTER™ products from those of others.  Customers in this judicial district and elsewhere readily recognize MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress as distinctive designations of the origin of MEC's MONSTER™ and MONSTER ENERGY® brand drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items.  MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and the MONSTER Trade Dress are intellectual property assets of enormous value as symbols of MEC and its quality products,

1  reputation, and goodwill.

2  **B.   Defendant O'Neal USA's Breach of the Settlement Agreement and**
3  **Defendants' Infringement of MEC's Claw Icon Mark, MONSTER™**
4  **Mark, MONSTER ENERGY® Mark, MONSTER Trade Dress, and**
5  **Copyrighted Works**

6      28.   On March 6, 2009, MEC filed suit in this Court, Civil Action No.

7  CV09-1594 JSL (AJWx), against Defendant O'Neal USA asserting claims for

8  trademark infringement, trade dress infringement, trademark dilution, and unfair

9  competition ("the Prior Lawsuit").

10      29.   MEC and Defendant O'Neal USA decided to resolve the dispute in

11  the Prior Lawsuit, and on July 17, 2009, MEC entered into a Confidential

12  Settlement Agreement with Defendant O'Neal USA ("Settlement Agreement"),

13  which included a separate Confidential Trademark License Agreement

14  ("Trademark License Agreement").   Pursuant to the Trademark License

15  Agreement, MEC authorized Defendant O'Neal USA to use certain of MEC's

16  trademarks in connection with specific products (the "Authorized Products"),

17  for a limited period of time, and under other specified conditions and

18  restrictions.   The Settlement Agreement provided that, except as expressly

19  permitted by the terms of the Trademark License Agreement, Defendant O'Neal

20  USA "on behalf of itself and its parents, subsidiaries, affiliates, officers, agents,

21  servants, employees, attorneys" agreed, *inter alia*, not to make, distribute, or sell

22  products that used MEC's trademarks or the MONSTER Trade Dress and "to

23  refrain from representing that any of the products it manufactures, advertises,

24  sells, markets or distributes are made by, authorized by, or are otherwise

25  affiliated with" MEC.   The Trademark License Agreement terminated May 31,

26  2011.

27      30.   MEC is informed and believes, and on that basis alleges, that

28  Defendant O'Neal Europe (then operating under the name 2-Wheel

Distribution) was at least a distributor of Defendant O'Neal USA from as early as 2006 until approximately April 2014. MEC is informed and believes, and on that basis alleges, that in approximately April 2014, Defendant O'Neal Europe became an affiliate, sister company, and/or subsidiary of Defendant O'Neal USA.

31.   MEC is informed and believes, and on that basis alleges, that Defendant O'Neal USA, without any authorization from MEC and at least through or in concert with Defendant O'Neal Europe and its predecessor, continued to manufacture, advertise, promote, sell and/or offer for sale items, including helmets, gloves and apparel, bearing MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark and/or displaying the MONSTER Trade Dress after the Trademark License Agreement terminated and in breach of the Settlement Agreement with MEC.

32.   Defendant O'Neal Europe identifies dealers and distributors for products manufactured by Defendants O'Neal USA and/or O'Neal Europe on the website www.oneal-b2b.com. Several of the dealers and/or distributors identified on this website are promoting, selling and/or offering for sale products manufactured by Defendants O'Neal USA and/or O'Neal Europe that bear marks that are essentially identical to MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, as well as displaying MEC's distinctive MONSTER Trade Dress.

33.   Defendants O'Neal USA and O'Neal Europe, through their authorized dealers and/or distributors, offer for sale, sell, import and/or distribute products bearing MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, and/or MEC's distinctive MONSTER Trade Dress in the United States, including in California and this judicial district. MEC is informed and believes, and on that basis alleges, Defendants O'Neal USA and O'Neal Europe know and intend that products bearing MEC's Claw

-19-

Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress are sold in the United States, including in California and this judicial district.

34.   Defendants have infringed MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress by promoting, advertising, selling and/or offering to sell items such as helmets, apparel and accessories (the "Accused Products"), unlawfully bearing marks that are the same or essentially identical to MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, and/or MEC's distinctive MONSTER Trade Dress.   Photographs of some Defendants' Accused Products, shown next to authentic products authorized by MEC, are shown below.

**Examples of the Accused Product**s

  

 

35.    MEC is informed and believes, and on that basis alleges, that Defendants have continued to use MEC's Claw Icon Mark, MONSTER<sup>TM</sup> Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress in an attempt to falsely associate their Accused Products with MEC or to otherwise trade upon MEC's valuable reputation and customer good will in its Claw Icon Mark, MONSTER<sup>TM</sup> Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress, and MEC's high quality products sold in connection with its marks and distinctive trade dress.

36.    MEC is informed and believes, and on that basis alleges, that Defendants' continued use of MEC's Claw Icon Mark, MONSTER<sup>TM</sup> Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress is designed and intended to cause confusion, mistake or deception as to the source or sponsorship of Defendants' Accused Products.

37.    MEC is informed and believes, and on that basis alleges, that it is Defendants' purpose to cause consumers and potential customers to believe that Defendants' Accused Products are associated with MEC or MEC's MONSTER™ family of products when, in truth and fact, they are not.

38.    By virtue of the acts complained of herein, Defendants have created a likelihood of injury to MEC's business reputation and goodwill, caused a likelihood of consumer confusion, mistake and deception as to the source of origin or relationship of MEC's and Defendants' goods, and have otherwise competed unfairly with MEC by unlawfully trading on and using MEC's Claw Icon Mark, MONSTER<sup>TM</sup> Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress without MEC's permission or consent.

39.    MEC is informed and believes, and on that basis alleges, that Defendants have directly copied MEC's trademarks and MEC's copyrighted Claw Icon and can art design featuring its Claw Icon Mark.

40.    MEC is informed and believes, and on that basis alleges, that Defendants' acts complained of herein are willful and deliberate.

41.    Defendants' acts complained of herein have caused damage to MEC in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.  Defendants' acts complained of herein also have caused MEC to suffer irreparable injury to its business.  MEC will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from their wrongful actions complained of herein.

## IV.  **FIRST CLAIM FOR RELIEF**

### (Trademark Infringement under 15 U.S.C. § 1114)

42.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-41 of this Complaint as though fully set forth herein.

43.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

44.    Defendants have used in commerce, without permission of MEC, reproductions, copies or colorable imitations of at least MEC's marks that are the subject of MEC's U.S. Trademark Registration Nos. 2,903,214, 3,434,821, 3,434,822, 3,963,668, 3,963,669, 4,011,301, 4,051,650, 4,332,062, 3,134,841, 3,908,600, 3,908,601, 3,914,828, 3,923,683, 3,044,315, 3,044,314, 3,057,061, 3,134,842, 4,036,680, 4,036,681, 4,111,964, 4,129,288, 4,269,880, 4,376,796, 4,451,535, 4,532,292, and 4,534,414 in connection with the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of Defendants' Accused Products.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

45.    MEC is informed and believes, and on that basis alleges, that Defendants' activities complained of herein constitute willful and intentional infringements of MEC's registered marks, and Defendants did so with the intent

to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' Accused Products are associated with, sponsored by, originated from, or are approved by MEC, when in truth and fact they are not.

46.    MEC is informed and believes, and on that basis alleges, that Defendants had actual knowledge of MEC's ownership and prior use of MEC's registered marks, and without the consent of MEC, have willfully and intentionally violated 15 U.S.C. § 1114.  MEC is further informed and believes, and on that basis alleges, that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

47.    Defendants, by their actions, have irreparably injured MEC and damaged MEC in an amount to be determined at trial.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF
### (Trademark Counterfeiting Under 15 U.S.C. § 1114)

48.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-47 of this Complaint as though fully set forth herein.

49.    This is a claim for trademark counterfeiting arising under 15 U.S.C. § 1114.

50.    Defendants have used in commerce, without permission of MEC, marks that are identical to, or substantially indistinguishable from, at least the marks that are the subject of MEC's U.S. Trademark Registration Nos. 3,908,601, 4,011,301, and 4,051,650 in connection with the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of Defendant's Accused Products.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

51.   MEC is informed and believes, and on that basis alleges, that Defendants have used the marks in connection with the Accused Products knowing they are counterfeit.  MEC is informed and believes, and on that basis alleges, that the activities of Defendants complained of herein constitute willful and intentional trademark counterfeiting, and that Defendants did so with the intent to unfairly compete against MEC, to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' Accused Products are associated with, sponsored by, originated from, or are approved by MEC, when in truth and fact they are not.

52.   MEC is informed and believes, and on that basis alleges, that Defendants had actual knowledge of MEC's ownership and prior use of MEC's registered marks, and without the consent of MEC, have willfully and intentionally violated 15 U.S.C. § 1114.  MEC is further informed and believes, and on that basis alleges, that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

53.   Defendants, by their actions, have irreparably injured MEC and damaged MEC in an amount to be determined at trial.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

### (Federal Dilution under 15 U.S.C. § 1125(c))

54.   MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-53 of this Complaint as though fully set forth herein.

55.   This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

56.    Products sold under MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world. By virtue of the wide renown acquired by MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark are famous, and became so prior to Defendants' acts complained of herein.

57.    Defendants' unauthorized commercial use of MEC's Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark in connection with the production, advertisement, offering for sale and/or sale of Defendants' Accused Products has caused and is likely to continue to cause dilution of the distinctive qualities of the famous Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark.

58.    Defendants' acts are likely to tarnish, injure, or trade upon MEC's business, reputation or goodwill, and to deprive MEC of the ability to control the use of its Claw Icon Mark, MONSTER™ Mark, and MONSTER ENERGY® Mark, and quality of products associated therewith.

59.    MEC is informed and believes, and on that basis alleges, that Defendants' dilution has been willful and deliberate.

60.    Defendants, by their actions, have irreparably injured MEC and damaged MEC in an amount to be determined at trial.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

/ / /

## VII.  FOURTH CLAIM FOR RELIEF

### (False Designation of Origin and Trade Dress Infringement under 15 U.S.C. § 1125(a))

61.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-60 of this Complaint as though fully set forth herein.

62.    This is a claim for trade dress infringement and false designation of origin arising under 15 U.S.C. § 1125(a).

63.    Without MEC's consent, Defendants have created and will create a false designation of origin by using in commerce, MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress, and/or designations that are substantially identical or confusingly similar to those Marks, in connection with the advertising, offering for sale, distributing, and/or sale of Defendants' Accused Products, thereby causing a likelihood of confusion, mistake or deception as to an affiliation, connection or association with MEC or to suggest MEC as the origin of the goods and/or services or that MEC has sponsored or approved Defendants' Accused Products or commercial activities, when in truth and fact they are not sponsored or approved by MEC.

64.    MEC is informed and believes, and on that basis alleges, that Defendants did so with the intent to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' Accused Products are associated with, sponsored by or approved by MEC, when in truth and fact they are not.

65.    MEC's MONSTER Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

66.     MEC is informed and believes, and on that basis alleges, that Defendants had actual knowledge of MEC's ownership and prior use of its Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and MONSTER Trade Dress, and have willfully and deliberately violated 15 U.S.C. § 1125(a).

67.     Defendants, by their actions, have irreparably injured MEC and damaged MEC in an amount to be determined at trial.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. § 501 *et seq.*)

68.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-67 of this Complaint as though fully set forth herein.

69.     This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq.*

70.     MEC is the owner of valid and enforceable copyrights in the Claw Icon Mark, can art and packaging, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.* ("Copyrighted Works").

71.     MEC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Works, and has obtained Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215 and VA 1-789-900.

72.     Defendants' deliberate copying of MEC's Copyrighted Works infringes and continues to infringe MEC's copyrights in violation of 17 U.S.C. § 501(a).  Defendants are directly infringing on MEC's exclusive right to reproduce copies, make derivative works and distribute copies of its Copyrighted Works under 17 U.S.C. §§ 106(1)–(3).

73.     MEC is informed and believes, and on that basis alleges, that Defendants' infringement has been willful and deliberate.

74.     Defendants, by their actions, have irreparably injured MEC and damaged MEC in an amount to be determined at trial.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

### IX.  SIXTH CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code § 17200 *et seq*.)

75.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-74 of this Complaint as though fully set forth herein.

76.     This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

77.     By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the consumers and public and have unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

78.     Defendants' acts complained of herein constitute unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged MEC.

79.     Defendants, by their actions, have irreparably injured MEC and damaged MEC.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

### X.  SEVENTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

80.     MEC hereby repeats, realleges, and incorporates by reference

1  paragraphs 1-79 of this Complaint as though fully set forth herein.

2      81.   This is an action for unfair competition under the common law of

3  the state of California.

4      82.   Defendants' acts complained of herein constitute unfair

5  competition under the common law of the state of California.

6      83.   MEC is informed and believes, and on that basis alleges, that

7  Defendants' infringement has been willful and deliberate and committed with

8  knowledge that Defendants' unauthorized use of the Claw Icon Mark,

9  MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade

10  Dress will cause a likelihood of confusion.

11     84.   Defendants' willful acts of trademark infringement under

12  California common law constitute fraud, oppression and malice.  Accordingly,

13  MEC is entitled to exemplary damages.

14     85.   Defendants, by their actions, have irreparably injured MEC and

15  damaged MEC in an amount to be determined at trial.  Such irreparable injury

16  will continue unless Defendants are preliminarily and permanently enjoined by

17  this Court from further violation of MEC's rights, for which MEC has no

18  adequate remedy at law.

## XI.  EIGHTH CLAIM FOR RELIEF

### (Breach of Contract)

21     86.   MEC hereby repeats, realleges, and incorporates by reference

22  paragraphs 1-85 of this Complaint as though fully set forth herein.

23     87.   This is an action for breach of contract pursuant to the Settlement

24  Agreement entered into between MEC and Defendant O'Neal USA.

25     88.   MEC performed all, or substantially all, that was required under the

26  Settlement Agreement.

27     89.   Defendant O'Neal USA failed to comply with what was required

28  under the Settlement Agreement.

90.    Defendant O'Neal USA's manufacture, promotion, sale and/or offer for sale of products bearing the Claw Icon Mark, MONSTER™ Mark, and/or MONSTER ENERGY® Mark, and/or the MONSTER Trade Dress other than the Authorized Products and after the expiration of the term specified in the License Agreement constitutes a material breach of the Settlement Agreement.

91.    Defendant O'Neal USA's acts of trademark, trade dress and copyright infringement, and false designation of origin, complained of herein, were prohibited by the express terms of the Settlement Agreement, and/or the implied covenant of good faith and fair dealing, and constitute a material breach of the Settlement Agreement.

92.    Defendant O'Neal USA's material breach of the Settlement Agreement, and the other aforesaid acts, have damaged MEC in an amount to be determined at trial.

93.    Defendant O'Neal USA has irreparably injured MEC.   Such irreparable injury will continue unless Defendant O'Neal USA is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff MEC respectfully requests the Court to award MEC the following relief:

A.    That the Court render a final judgment in favor of MEC and against Defendants on all claims for relief herein;

B.    That the Court render a final judgment declaring Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1114 by infringing MEC's trademark rights in its federally registered Claw Icon Mark and MONSTER ENERGY® Mark, MONSTER™ Mark, and its MONSTER Trade Dress and by counterfeiting MEC's federal registered marks that are the subject of at least MEC's U.S. Trademark Registration Nos. 3,908,601, 4,011,301, and

1    4,051,650;

2        C.    That the Court render a final judgment declaring that Defendants

3    have violated and willfully violated the provisions of 15 U.S.C. § 1125(c) by

4    diluting MEC's famous Claw Icon Mark, MONSTER ENERGY® Mark and

5    MONSTER™ Mark;

6        D.    That the Court render a final judgment declaring that Defendants

7    have violated and willfully violated the provisions of 15 U.S.C. § 1125(a) by

8    infringing MEC's famous Claw Icon Mark, MONSTER™ Mark, MONSTER

9    ENERGY® Mark and MONSTER Trade Dress through the production,

10   marketing, sale and promotion of Defendants' Accused Products;

11       E.    That the Court render a final judgment declaring that Defendants

12   have violated 17 U.S.C. § 501(a) by infringing MEC's Copyrighted Works;

13       F.    That the Court render a final judgment declaring that Defendants

14   have violated California Business and Professions Code §§ 17200, *et seq.* by

15   unfairly competing with MEC;

16       G.    The Court render a final judgment declaring Defendants have

17   violated California common law by unfairly competing with MEC;

18       H.    That the Court render a final judgment declaring that Defendant

19   O'Neal USA has breached the Settlement Agreement with MEC from the Prior

20   Lawsuit;

21       I.    That Defendants, their officers, principals, agents, servants,

22   employees, attorneys, successors, and assigns and all other persons in active

23   concert or participation with any of them who receive actual notice of the

24   injunction by personal service or otherwise, be forthwith temporarily,

25   preliminarily and permanently enjoined from:

26           a.    using MEC's Claw Icon Mark, MONSTER ENERGY®

27       Mark, MONSTER™ Mark, and/or MONSTER Trade Dress in connection

28       with Defendants' unauthorized goods, in advertising, promoting, selling

or offering to sell Defendants' unauthorized goods, and/or using confusingly similar variations of the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade Dress in any manner that is likely to create the impression that Defendants' unauthorized goods originate from MEC, are endorsed by MEC, or are connected in any way with MEC;

b.  manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or MONSTER Trade Dress, and/or any confusingly similar marks;

c.  manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing MEC's copyrighted Claw Icon design, copyrighted can designs, or any design substantially similar thereto;

d.  without permission or authorization from MEC, copying, reproducing, distributing, displaying, creating derivative works of MEC's copyrighted Claw Icon design and/or copyrighted beverage packaging designs and/or importing, manufacturing, or producing any products bearing copies of MEC's copyrighted Claw Icon design and/or copyrighted can designs;

e.  filing any applications for registration of any trademarks, trade dress, copyrighted works, or designs confusingly similar to MEC's Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, MONSTER Trade Dress, copyrighted Claw Icon design, and/or copyrighted can designs;

f.  otherwise infringing or diluting MEC's Claw Icon Mark,

MONSTER™ Mark, MONSTER ENERGY® Mark, and/or any of MEC's other trademarks;

       g.    falsely designating the origin of Defendants' goods;

       h.    unfairly competing with MEC in any manner whatsoever; and

       i.    causing a likelihood of confusion or injury to MEC's business reputation.

J.    The Defendants be directed to file with this Court and serve on MEC within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

K.    That Defendants be required to deliver and destroy all literature, advertising, goods, and other materials bearing the infringing marks pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503;

L.    That Defendants be required to account to MEC for any and all profits derived by Defendants and all damages sustained by MEC by virtue of Defendants' acts complained of herein;

M.    That Defendants be ordered to pay over to MEC all damages MEC has sustained as a consequence of the acts complained of herein, subject to proof at trial;

N.    That MEC be awarded damages pursuant to 15 U.S.C. § 1117, together with prejudgment and post-judgment interest and, alternatively, if MEC elects, that MEC be awarded statutory damages for use of counterfeit marks pursuant to 15 U.S.C. § 1117(c);

O.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117; That the amount

of damages be trebled for intentional use of a counterfeit mark pursuant to 15 U.S.C. § 1117(b);

P.     That Defendants' actions be deemed willful;

Q.     That MEC be awarded its damages and Defendants' profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if MEC elects, that MEC be awarded statutory damages pursuant to 17 U.S.C. § 504;

R.     That an award of reasonable costs, expenses and attorneys' fees be awarded to MEC pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504;

S.     That MEC recover exemplary damages pursuant to California Civil Code § 3294;

T.     That interest be awarded on all applicable damages under California Civil Code § 3288;

U.     That MEC be awarded restitution and disgorgement; and

V.     For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  June 30, 2014          By:  */s/Lynda J. Zadra-Symes*
                                    Lynda J. Zadra-Symes
                                    Matthew S. Bellinger

                                    Attorneys for Plaintiff
                                    MONSTER ENERGY COMPANY

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  June 30, 2014        By:  */s/Lynda J. Zadra-Symes*
                                  Lynda J. Zadra-Symes
                                  Matthew S. Bellinger

                                  Attorneys for Plaintiff,
                                  MONSTER ENERGY COMPANY

18046693